Filed 1/9/15  P. v. Vargas CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>BENJAMIN VARGAS,<br><br>    Defendant and Appellant. | 2d Crim. No. B247659<br>(Super. Ct. No. 1369387)<br>(Santa Barbara County)<br>Modification of Opinion on<br>Denial of Rehearing<br>No Change in Judgment |

THE COUR:

The opinion filed herein on December 17, 2014, is modified as follows:

On page 8, after the words "ten inches tall" on line 6 of the first full paragraph, insert the following as the beginning of the next paragraph:

The day after Solis testified, defense counsel complained to the court that her testimony had taken him by surprise because "there's no statement from [her] in the discovery."

The petition for rehearing is denied.

No Change in Judgment

NOT FOR PUBLICATION

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE, | 2d Crim. No. B247659 |
| Plaintiff and Respondent, | (Super. Ct. No. 1369387) |
| | (Santa Barbara County) |
| v. | |
| BENJAMIN VARGAS, | |
| Defendant and Appellant. | |

Benjamin Vargas was charged with the murder of Vincent Velasquez.  A jury convicted him of the lesser included offense of voluntary manslaughter.  (Pen. Code, § 192, subd. (a).)[1]  He was sentenced to prison for six years.  Appellant contends that the prosecutor violated his constitutional rights to compulsory process and to remain silent.  In addition, he contends that the prosecutor failed to comply with discovery requirements and committed various acts of misconduct.  Finally, appellant maintains that the trial court lacked jurisdiction to correct a sentencing error.  We affirm.

---

[1] All statutory references are to the Penal Code.

*Facts*

At about 10:30 p.m., Velasquez and some friends drove to Isla Vista in Santa Barbara County. Velasquez was standing next to their parked car when appellant and Karen Medina walked by. Velasquez said, "[H]ey, what's up?" Appellant replied, "Hey don't what's up me. You don't know me, Homie." "You don't know where I'm from. Don't say what's up to me." Velasquez responded, "I can say what's up to you, what's up man[?]" "Just keep on moving. Just keep on going. I don't know you. Keep on walking with your girlfriend."

Velasquez's friend, Velez, was sitting in the driver's seat of the car. He saw appellant walk toward Velasquez. In the car's rearview mirror, Velez saw appellant "just fall down." Medina started hitting Velasquez in the face and chest. Velez got out of the car, grabbed Medina by the arm, and told her to "just let them fight one-on-one." Medina stopped hitting Velasquez.

Velez saw appellant hit Velasquez "in the head, . . . the chest, the side, all over his body, just everywhere." Velasquez fought back and hit appellant in the face and body. They bumped up against a parked Mercedes and "then they started pushing each other towards [a] little Jeep." At this point, Velasquez was not hitting appellant, but appellant was hitting Velasquez. Velasquez "was just holding onto [appellant], grabbing him." Velasquez fell to one knee. Appellant "threw him on the ground" and got on top of him. Appellant hit Velasquez "[a]ll over his chest." Velasquez did not fight back.

Velez told appellant, "It's over," and "just pushed him off" Velasquez. Although Velez did not see a weapon, Velasquez was stabbed 16 times and died as a result of his wounds.

*Defense Evidence*

We summarize the testimony of Karen Medina. At the time of trial, Medina was 21 and appellant was 20 years old. Medina had been appellant's girlfriend for five years. Appellant is the father of her child.

On the night in question, appellant's sister, Maria, drove Medina and appellant to Isla Vista and dropped them off there. While walking on the sidewalk, Medina and appellant passed by Velasquez, who was standing next to a parked car. Velasquez said, "What's up, Homie?" Appellant replied, "[W]hat's up?" Velasquez responded, "Well, what's up then?"

The driver's door of the car suddenly swung open, and appellant looked in the direction of the door. Velasquez hit appellant in the head, causing him to fall. He "hit his head on the gravel street." "[A]s [appellant] was standing up, [Velasquez] just started hitting him." Appellant was "not doing anything. He's getting beat up." Medina was scared because Velasquez "was a lot bigger than [appellant] and . . . you could tell that he was really strong."

Medina grabbed Velasquez's arm and tried to pull him away from appellant. Velez grabbed Medina's arm and pulled her to the side. Velez said, "No. Let them fight one-on-one." Velez repeatedly said, "Fuck him up, Vince [Velasquez's first name]. Get him, Vince."

Appellant and Velasquez "slammed" into a "car on the other side of the street." They "rolled off" the car and fell into the street. Velez walked to Velasquez and helped him get up. When appellant stood up, Medina "went straight to him and we just ran, like we were scared." Appellant "was freaking out." Maria picked them up and drove them to her house.

*Prosecutor's Alleged Violation of Appellant's Right to Compulsory Process*

Appellant argues that the prosecutor's misconduct violated his constitutional right to compulsory process, i.e., "the right of one accused of a crime to compel the testimony

3

of those who have favorable evidence." (*People v. Jacinto* (2010) 49 Cal.4th 263, 268.) The alleged misconduct was obtaining a grand jury indictment of appellant's sister, Maria, for being an accessory after the fact to the murder of Velasquez. According to appellant, the indictment "was predicated upon the prosecutor's position that Maria knowingly drove a 'getaway' car when she picked up appellant after the stabbing of Velasquez . . . ." Appellant continues, "After the indictment, the attorney for Maria advised appellant's trial counsel that she would invoke her Fifth Amendment rights rather than testify for her brother in his defense." On March 7, 2012, approximately one month before the jury trial began, the indictment of Maria was set aside for insufficiency of the evidence.

Based on the alleged prosecutorial misconduct and Maria's refusal to testify, appellant made a pretrial motion to dismiss the case or, in the alternative, recuse the Santa Barbara District Attorney's Office. The trial court denied the motion. At trial Maria did not testify. After the defense rested, appellant made a motion to dismiss on the ground that, because of the indictment of Maria, "he didn't get to assert his right to call witnesses in his own defense." The court denied the motion.

"To prevail on a claim of prosecutorial violation of the right to compulsory process, a defendant must establish three elements. ' "First, he must demonstrate prosecutorial misconduct, i.e., conduct that was 'entirely unnecessary to the proper performance of the prosecutor's duties and was of such a nature as to transform a defense witness willing to testify into one unwilling to testify.' " [Citation.] Second, he must establish the prosecutor's misconduct was a substantial cause in depriving the defendant of the witness's testimony. [Citation.] . . . [Third], the defendant must show the testimony he was unable to present was material to his defense.' [Citations.]" (*People v. Jacinto*, *supra*, 49 Cal.4th at pp. 269-270.)

Appellant has failed to satisfy the first element. He has not shown that the prosecutor committed misconduct in seeking to indict Maria. That the indictment was set

4

aside for insufficiency of the evidence does not establish prosecutorial misconduct. The trial court explained that it had set aside the indictment because "the evidence did not . . . establish [Maria's] prior knowledge of a crime having been committed when she drove, what [the prosecutor] described as the getaway car." The court found that, although "the charging decision was erroneous as to Maria," the prosecutor had not committed misconduct "in the presentation of the case to the Grand Jury."

Appellant has also failed to satisfy the third element: that Maria's testimony was material to his defense. Appellant was required to make, but did not make, "a plausible showing that the testimony of the [unavailable] witness[] would have been material and favorable to his defense, in ways not merely cumulative to the testimony of available witnesses." (*United States v. Valenzuela-Bernal* (1982) 458 U.S. 858, 873 [102 S.Ct. 3440, 73 L.Ed.2d 1193].) Appellant claims that Maria would have testified that "she did not see him with a knife that night and that her brother did not carry a knife." But this testimony would have been cumulative to Medina's testimony. Medina testified that she had not seen a knife that night and that, during the entire time she had known appellant, she had never seen him in possession of a knife.

Even if Maria's testimony were material, "sanctions [would] be warranted . . . only if there is a reasonable likelihood that [her] testimony could have affected the judgment of the trier of fact. [Citation.]" (*United States v. Valenzuela-Bernal*, *supra*, 458 U.S. at pp. 873-874.) No such reasonable likelihood exists. Maria was not present during the fight between appellant and Velasquez. As previously discussed, her testimony was cumulative to Medina's testimony.

*Prosecutor's Alleged Violation of Appellant's Right to Remain Silent*

Appellant contends that "the prosecutor committed misconduct, violating appellant's right to remain silent, when [he] sought to introduce appellant's failure to contact or speak with the police after the killing of Velasquez or at the time of arrest." Appellant argues that the prosecutor improperly asked Medina whether, after the

5

shooting, anyone in Maria's car had said, " 'Hey, let's call the police'?" Appellant did not object to the question, and Medina answered, "No." Because appellant did not object, he "forfeited any complaint on appeal regarding the propriety of [this] question[]." (*People v. Hajek* (2014) 58 Cal.4th 1144, 1210.)

Appellant claims that the prosecutor improperly asked Medina the following question concerning his conduct when the police confronted him: "[D]id [appellant] turn around or did he walk right up to the police and say, 'Take me?' " Medina answered, "No," and appellant objected. The trial court sustained the objection. During a subsequent conference in the court's chambers, the prosecutor explained that he had asked the question because he "was simply trying to get into an area that is listed in a police report that says as soon as the police showed up, [appellant] turned and he walked the other way and then he was arrested." The court responded that the prosecutor's question could "be construed as . . . *Griffin* error." (*Griffin v. California* (1965) 380 U.S. 609 [85 S.Ct. 1229, 14 L.Ed.2d 106].) The trial court admonished the jury: "[Y]ou are specifically instructed to completely disregard any implications from the question that was asked and the way it was asked . . . . The objection was sustained and you should disregard the question in its entirety and Ms. Medina's answer."

The prosecutor's question was not *Griffin* error. "In *Griffin,* 'the high court held the prosecution may not comment on a defendant's failure to testify.' [Citation.]" (*People v. Tully* (2012) 54 Cal.4th 952, 1021.) The prosecutor's question had nothing to do with appellant's failure to testify.

Appellant maintains that the question was improper because it sought to elicit evidence of appellant's exercise of his Fifth Amendment right to remain silent. In *People v. Tom* (2014) 59 Cal.4th 1210, 1236, our Supreme Court held "that use of a defendant's postarrest, pre-*Miranda* silence is not barred by the Fifth Amendment in the absence of custodial interrogation or *a clear invocation of the privilege*." (Italics added.) Where the defendant is not subjected to custodial interrogation, "the circumstances [must make] it

6

clear to the officer that the defendant . . . invoked the privilege against self-incrimination." (*Id*., at p. 1237.) The defendant must "make a timely and unambiguous assertion of the privilege in order to benefit from it." (*Id*., at p. 1215.) The same rule applies where the prosecution seeks to use a defendant's prearrest, pre-*Miranda* silence. (See *People v. Free* (1982) 131 Cal.App.3d 155, 165 ["Prearrest silence may be commented upon unless the court finds the silence was an invocation of Fifth Amendment rights"].) No evidence was presented that, when the police confronted appellant, he clearly invoked his privilege against self-incrimination. The prosecutor's question, therefore, was not improper.

Even if the question had been improper, the error would have been harmless beyond a reasonable doubt. Medina testified that appellant had not said "take me" to the police. No inference of guilt can be drawn from appellant's failure to say these words. On the other hand, an inference of guilt could have been drawn if he had said "take me." Such a statement could be construed as meaning, "Take me, I'm guilty." Furthermore, "[w]e presume the jury understood and followed the court's admonition" to disregard the prosecutor's question and Medina's answer. (*People v. Tully, supra,* 54 Cal.4th at p. 1055.)

Finally, appellant argues that the prosecutor committed misconduct during closing argument when he stated that after the shooting no one in Maria's car had said " 'call the police.' " Appellant objected, citing *Griffin*. The court responded, "The objection's noted for the record." No evidence was presented that, by not saying "call the police" in Maria's car, appellant was invoking his Fifth Amendment right to remain silent. The prosecutor's argument, therefore, did not constitute misconduct. (*People v. Tom*, *supra*, 59 Cal.4th at p. 1236; *People v. Free*, *supra*, 131 Cal.App.3d at p. 165.)

### *Prosecutor's Alleged Violation of Discovery Requirements*

Vanessa Solis was the People's first witness. The prosecutor had included her name in the list of prosecution witnesses provided to appellant. But the prosecutor had

7

not disclosed any statements that Solis may have made to the police or prosecution. Appellant argues that this nondisclosure violated California's reciprocal discovery statute (§ 1054 et seq.) and his constitutional rights to a fair trial and to present a defense.

Solis testified as follows: She met Velasquez in late 2004. From that time until his death, she was his girlfriend. "[I]f he were alive today, we'd be together for seven years." In January 2010 Velasquez moved to Santa Barbara to be with his ill grandmother. Velasquez had "a lot" of tattoos on his body, but he was not a member of a gang. Before he died, Velasquez "was working as a barber and he was also going to school to be a firefighter." ( He weighed 180 pounds and was five feet, ten inches tall. On the other hand, the prosecutor had provided discovery as to Solis's sister, Valerie. Counsel stated that when the prosecution called Solis as a witness, he "didn't even know who she was." Counsel declared: "I don't object at that time because I'm not sure [that there was no discovery as to Solis] and I don't want to make a big deal out of something unless I'm sure . . . . And there's no doubt that [the prosecutor's] intent was to deceive and he did so." The prosecutor protested that Solis "was on [his] witness list" and "there is no written report from [her] to give to [defense counsel]."

Because of the alleged discovery violation, the trial court stated that it was "inclined to strike [Solis's] testimony." Defense counsel asked the court not to strike her testimony: "[S]triking the testimony I think does more harm than good. I'd rather just impeach it." The trial court permitted appellant to call Solis as a witness and "impeach" her "with things that would question her statement, 'if he were still alive, we'd have been together seven years," and that kind of stuff." Appellant called Solis as a witness and impeached portions of her prior testimony.

The People argue that the prosecutor complied with his discovery obligations: "The prosecutor . . . stated that he had no written reports on [Solis] to disclose . . . , and there was nothing establishing that the prosecutor had any oral statements to divulge." We need not resolve this issue because appellant has failed to show that, if a discovery

8

violation occurred, "it is reasonably probable that a result more favorable to [appellant] would have been reached in the absence of the [violation]." (*People v. Watson* (1956) 46 Cal.2d 818, 836.) "No reason appears why any violation of the California reciprocal discovery statute . . . is not subject on appeal to the harmless-error standard set forth in *People v. Watson* (1956) 46 Cal.2d 818, 836, . . . and thus is a basis for reversal only where it is reasonably probable, by state-law standards, that the omission affected the trial result." (*People v. Zambrano* (2007) 41 Cal.4th 1082, 1135, fn. 13, disapproved on another ground in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.)

It is not reasonably probable that Solis's testimony affected the trial result. She was not a witness to the commission or aftermath of the crime. In any event, appellant is precluded from complaining about the alleged discovery violation because he declined the trial court's offer to strike Solis's testimony in its entirety. We presume that the jury would have followed the court's instruction to disregard her testimony. (See *People v. Thompson* (2010) 49 Cal.4th 79, 138 ["we presume a jury follows its instructions"]. We therefore also presume that the striking of Solis's testimony would have cured any prejudice resulting from the discovery violation.

*Other Acts of Alleged Prosecutorial Misconduct*

I

Appellant asserts that the prosecutor committed misconduct in his opening statement when he declared "that it was appellant who brought the knife to Isla Vista that night." Appellant argues that "[t]he prosecutor had no reasonable expectation he could prove who brought the knife." Appellant concedes that his counsel "made no objection at the time of the prosecutor's statement." Because defense counsel did not object, appellant has forfeited this issue. " 'In order to preserve a claim of misconduct, a defendant must make a timely objection and request an admonition . . . ." (*People v. Williams* (2013) 56 Cal.4th 630, 671.)

9

In any event, the prosecutor did not commit misconduct. "The purpose of the opening statement is to inform the jury of the evidence the prosecution intends to present, and the manner in which the evidence and reasonable inferences relate to the prosecution's theory of the case. [Citation.]" (*People v. Millwee* (1998) 18 Cal.4th 96, 137.) Based on the evidence, it is reasonable to infer that appellant brought the knife to Isla Vista.

## II

Appellant argues that the prosecutor committed misconduct during closing argument when he stated that Velasquez "had been disabled by the time he had gotten to the Mercedes, that he had been stabbed numerous times before he even got to the Mercedes as Dr. Anthony told you." Defense counsel objected: "Misstates the evidence. Dr. Anthony testified nothing about being disabled at the Mercedes." The court said that counsel's "objection that [the prosecutor] has misstated the evidence is noted and I will neither sustain the objection [n]or overrule it." The court told the jury: "[Y]ou decide what the facts are and you decide what the evidence is and nothing that I say or do should influence your determination of what is evidence. . . . [¶] . . . [I]f you have any questions in your mind with regard to what the attorneys say and what the evidence was, [the court reporter] can clarify and respond to your questions."

The prosecutor misstated the evidence. Dr. Anthony performed an autopsy on appellant's body. He opined that Velasquez had died as a result of multiple stab wounds. Dr. Anthony mentioned nothing about a Mercedes and did not say at what point during the fight the stab wounds had been inflicted. But appellant fails to explain how, in view of the trial court's comments, the prosecutor's misstatement of the evidence deprived him of a fair trial or resulted in a miscarriage of justice. "[T]he federal Constitution does not require (and the state Constitution does not permit) the reversal of a criminal conviction unless the misconduct deprived defendant of a fair trial or resulted in a miscarriage of justice. [Citation.]" (*People v. Hinton* (2006) 37 Cal.4th 839, 865.)

10

## III

Appellant maintains that, during rebuttal argument, the prosecutor committed misconduct by misstating a jury instruction. Defense counsel objected that the prosecutor had misquoted the instruction "when he said 'any other witness.' It's 'any other person.' " The court told the jury that "what [the prosecutor] read to you was a mistake, but a mistake that the Court accepts as being understandable" and "honest." In view of the court's correction of the prosecutor's mistake, his misstatement of the instruction could not have deprived appellant of a fair trial or resulted in a miscarriage of justice.

### *Sentencing*

"Voluntary manslaughter is punishable by imprisonment in the state prison for 3, 6, or 11 years." (§ 193, subd. (a).) During sentencing, the trial court mistakenly stated: "The Court selects the midterm and sentences the defendant to serve *five* years in the Department of Corrections and Rehabilitation . . . ." (Italics added.) Three days later, the court issued an "ex parte order" correcting the sentence by "substituting the word 'six' for the word 'five.' "

Appellant claims that "[t]he trial court's order increasing [his] sentence from five years to six years was issued without jurisdictional authority under Penal Code section 1170, subdivision (d)." This issue is moot. If the trial court had not corrected its mistake, we would have corrected it on our own initiative. "[I]t is well established that the appellate court can correct a legal error resulting in an unauthorized sentence . . . at any time. [Citation.]" (*People v. Sanders* (2012) 55 Cal.4th 731, 743, fn. 13.) The court's original sentence was clearly unauthorized: "When a sentence of imprisonment is imposed, . . . the sentencing judge must select the upper, middle or lower term on each count for which the defendant has been convicted . . . ." (Cal. Rules of Court, rule 4.420(a).)

11

*Review of Velasquez's Sealed Naval Personnel File*

Velasquez's naval personnel file was submitted under seal to the trial court. Appellant sought the production of the file to "establish that Mr. Velasquez has a history of violent and aggressive behavior." The trial court reviewed the file in camera and ruled that the information it contained was not discoverable.

Appellant requests that we "review the naval personnel file in camera in a procedure similar . . . to a *Pitchess* review." (*Pitchess v. Superior Court* (1974) 11 Cal.3d 531.) In *Pitchess* our Supreme Court "held . . . that a defendant charged with battery on four Los Angeles County Sheriff's deputies could, in support of his claim of self-defense, discover any complaints of excessive force contained in the deputies' personnel files." (*City of Los Angeles v. Superior Court* (2002) 29 Cal.4th 1, 8-9.)

"A trial court's decision on the discoverability of material in police personnel files is reviewable under an abuse of discretion standard. [Citation.]" (*People v. Jackson* (1996) 13 Cal.4th 1164, 1220-1221.) We have reviewed Velasquez's naval personnel file and conclude that the trial court did not abuse its discretion in denying discovery of the information contained in that file.

*Disposition*

The judgment is affirmed.

NOT TO BE PUBLISHED.

YEGAN, J.

We concur:

GILBERT, P.J.

PERREN, J.

12

George C. Eskin, Judge

Superior Court County of Santa Barbara

_____


Susan Pochter, under appointment by the Court of Appeal, for Defendant and Appellant.


Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Paul M. Roadarmel, Jr., Supervising Deputy Attorney General, Stephanie A. Miyoshi, Deputy Attorney General, for Plaintiff and Respondent.