Filed 8/18/25  P. v. Schroder CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| THE PEOPLE, | C101379 |
| Plaintiff and Respondent, | (Super. Ct. No. 23F6274) |
| v. | |
| GARRICK RORY SCHRODER, | |
| Defendant and Appellant. | |

A jury found defendant Garrick Rory Schroder guilty of grand theft of catalytic converters worth more than $950, vandalism causing damages in excess of $400, and possession of burglary tools.  The trial court granted defendant probation.  On appeal, defendant argues there is not substantial evidence the fair market value of the catalytic converters he stole exceeded $950 or that the vandalism caused more than $400 in damage.  He further argues the probation condition that he stay away from Aramark Uniform Services is constitutionally overbroad.  We reduce his conviction on the theft charge to a misdemeanor but affirm the judgment in all other respects.

1

# I BACKGROUND

The information alleged defendant committed grand theft of catalytic converters worth more than $950, received the same catalytic converters as stolen property, vandalism causing in excess of $400 in damage, and possession of burglar's tools. (Pen. Code, §§ 487, subd. (a), 496, subd. (a), 594, subd. (b)(1), and 466.)[1]

During the early morning hours, an employee of Aramark Uniform Services saw defendant near the front gate of its parking lot carrying a distinctive red and black tool bag. Defendant got into a nearby truck, and the truck drove away. Upon inspection, the employee found saw blades under Aramark's trucks, five trucks missing catalytic converters, and a hole in the fence near the front gate. The employee found three catalytic converters sitting outside that hole.

As he responded to the call, Redding Police Officer Orlondo Rabon saw defendant walking with the red and black tool bag. After he arrived at the business, Officer Rabon canvassed the neighborhood and found the red and black bag behind a trash dumpster containing two catalytic converters, a number of saw blades, miscellaneous tools, and a saw.

The evidence on the value of the catalytic converters and the damages caused by this theft was sparse. On this point, the employee who discovered the thefts had no idea what the costs of catalytic converters were. Over the objection of defendant, Officer Rabon testified that prior to becoming a police officer, he worked as a "general manager of a rent-to-own store" in 2015. Officer Rabon testified catalytic converters were commonly stolen from the work vans at that store and it was his experience it cost more than $2,000 to replace each of them. Those vans were smaller than the size of Aramark's trucks. Officer Rabon had no experience with the cost of catalytic converters in 2023 or the cost of catalytic converters on full size vehicles generally.

---

[1] Further undesignated statutory references are to the Penal Code.

In closing argument, the prosecutor argued, "Lastly, with respect to Count 1, you heard testimony from Officer Rabon that based on his personal experience relating to his previous employment, catalytic converters for similar sized box truck vehicles were approximately $2,000 each and that was back in 2015. Here, in this case, we have five of them that have been removed in 2023. Now, common sense would tell us that $2,000 back in 2015 would likely be more than that value now." The prosecutor continued, "Thus, based on that testimony, the People have met their burden of the threshold of $950 for not only one catalytic converter but certainly for five."

The jury found defendant guilty of grand theft of more than $950, vandalism of more than $400, and possession of burglar tools.

The trial court suspended imposition of sentence and granted defendant formal probation on the condition he serve 180 days in jail. One condition of probation was that defendant "stay at least 100 yards away from Aramark Uniform Services located at 755 Butte Street in Redding."

Defendant timely appeals.

## II. DISCUSSION

### A. *Fair Market Value and Damages*

Defendant first argues that substantial evidence does not support the jury's conclusion the fair market value of the five catalytic converters exceeded $950 or the damage he caused exceeded $400. We agree the record lacks evidence as to the fair market value of the catalytic converters, but the testimony cited above provided substantial evidence to support the conclusion as to the damage caused by the vandalism.

To establish defendant committed grand theft, the prosecution bore the burden of proving defendant stole property with a fair market value of more than $950. (§§ 484, subd. (a), 487, subd. (a); *People v. Grant* (2020) 57 Cal.App.5th 323, 328-329 (*Grant*).) "The fair market value of an item is 'the highest price obtainable in the market place' as

3

between 'a willing buyer and a willing seller, neither of whom is forced to act.' " (*Grant,* at p. 329.)

Fair market value of stolen property may be established by an opinion or circumstantial evidence. (*Grant, supra*, 57 Cal.App.5th at p. 329.) The law has long recognized that an owner may testify concerning the value of his or her property. (*People v. Coleman* (1963) 222 Cal.App.2d 358, 361.) Similarly, the prosecution may offer testimony of authorized agents of the owner, who have sufficient knowledge of the value of the property. (Cf. Evid. Code, § 813, subd. (a)(3) [market value of real property may be established by "[a]n officer, regular employee, or partner" of owner "if the designee is knowledgeable as to the value of the property or property interest"].) Another method for proving fair market value is to present the testimony of those in the trade as to the value of an item or experienced salesclerks as to the prices charged by retail stores. (*Grant, supra*, 57 Cal.App.5th at p. 329.) "Jurors may also 'rely on their common knowledge' in determining the value of an item." (*Ibid*, citing *People v. Ortiz* (2012) 208 Cal.App.4th 1354, 1366 [" 'inference by the jurors was not mere speculation, but was instead reasonably based on common knowledge regarding the value of late-model BMW's' "].)

In reviewing the sufficiency of the evidence, we evaluate " ' "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." ' " (*In re Manuel G.* (1997) 16 Cal.4th 805, 822.) " 'We " 'presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' " ' " (*Ibid.*)

" 'Substantial evidence includes circumstantial evidence and any reasonable inferences drawn from that evidence.' [Citation.] However, '[a] reasonable inference may not be based on suspicion alone, or on imagination, speculation, supposition, surmise, conjecture, or guesswork; a finding of fact must be an inference drawn from

4

evidence rather than a mere speculation as to probabilities without evidence.' " (*Grant, supra*, 57 Cal.App.5th at p. 330.)

The fair market value in 2023 of catalytic converters, in a unknown condition for Aramark's vans of unknown years, makes and models is not a matter of common knowledge. More importantly, the People failed to present any evidence that the fair market value of each converter taken exceeded $190.21 (which is what would be required for five of these to exceed $950). The People did not present the testimony of the van's owner or his authorized agent as to the value of these converters. Indeed, the employee witness admitted he did not know how much the converters cost.

The People presented no person with experience in the auto industry nor any salesclerk from a store that sells catalytic converters to testify as to their fair market value in 2023. The People did not call a scrap dealer to whom this item would likely be sold. The only evidence in this record is that eight years prior to this theft, it cost more than $2,000 to fix catalytic converters on different trucks used by a different company. The cost to repair the trucks without more does not demonstrate the fair market value of the item stolen. The evidentiary desert thus created by the People left the jury to engage in speculation, supposition and conjecture to arrive at a conclusion the fair market value of the catalytic converters stolen by defendant exceeded $950. That is not substantial evidence. We therefore reduce this conviction to a misdemeanor. (§ 1181(6).)

The measure of value for the vandalism count, however, is different. Section 594 "does not itself specify a method for proving the amount of property damage." (*In re Kyle T.* (2017) 9 Cal.App.5th 707, 713.) Rather, the statute identifies the relevant question as the amount of defacement, damage, or destruction caused by the defendant. (§ 594, subd.(b)(1).) One way the amount of defacement, damage, or destruction can be calculated is the actual or estimated cost of repair. (*In re A.W.* (2019) 39 Cal.App.5th 941, 950.)

5

Officer Rabon provided the jury with some evidence as to how much it costs to fix catalytic converters in trucks eight years prior to this incident. While this is not the best or strong evidence of the damages caused by defendant, it is substantial evidence that the damage to the five trucks was more than $400 and thus supports the jury's verdict finding defendant guilty of felony vandalism.

### B. Probation Condition

Defendant next argues the probation condition he "stay at least 100 yards away" from Aramark Uniform Services located at "755 Butte Street in Redding" is constitutionally overbroad.[2] He contends the condition should be reduced to 50 yards from the location. We disagree.

A trial court has broad discretion to impose probation conditions to foster rehabilitation and protect public safety. (*People v. Moran* (2016) 1 Cal.5th 398, 403 (*Moran*).) These conditions, however, must not be unconstitutionally vague or overbroad. (*People v. Rhinehart* (2018) 20 Cal.App.5th 1123, 1126.) We review de novo a constitutional challenge to a probation condition. (*In re Malik J.* (2015) 240 Cal.App.4th 896, 901.)

In *Moran,* defendant was convicted of stealing $128 in items from a Home Depot in San Jose. (*Moran, supra*, 1 Cal.5th at p. 401.) In granting that defendant probation, the trial court imposed the condition that defendant not "go on the premises, parking lot adjacent or any store of Home Depot in the State of California." (*Ibid.*) In analyzing this condition generally, our Supreme Court concluded the trial court did not abuse its discretion in imposing the condition because the condition reasonably related to his crime

---

**2**      Defendant alternatively argues either no objection was necessary to raise this claim or his attorney was ineffective for failing to raise this claim in the trial court. In light of defendant's claim of ineffective assistance of counsel, we will exercise our discretion to reach the merits in lieu of addressing defendant's ineffective assistance claim. (See *People v. Williams* (1998) 17 Cal.4th 148, 161, fn. 6 [an appellate court has authority to reach a forfeited claim].)

of stealing from a Home Depot store.  (*Id.* at p. 404.)  Notably, the condition did not restrict the defendant from entering any other store, just the one he victimized.  (*Ibid.*)  The condition was also "reasonably directed at curbing his future criminality by preventing him from returning to the scene of his past transgression and thus helping him avoid any temptation of repeating his socially undesirable behavior."  (*Ibid.*)

Our Supreme Court rejected the defendant's argument this condition swept too broadly by violating his right to travel.  (*Moran, supra*, 1 Cal.5th at p. 407.)  The court noted the right to travel is not unlimited and that "imposing a limitation on probationers' movements as a condition of probation is common, as probation officers' awareness of probationers' whereabouts facilitates supervision and rehabilitation and helps ensure probationers are complying with the terms of their conditional release."  (*Id.* at p. 406.)  "Although criminal offenders placed on probation retain their constitutional right to travel, reasonable and incidental restrictions on their movement are permissible."  (*Ibid.*)

Similarly in *People v. Contreras* (2015) 237 Cal.App.4th 868, 881, the appellate court concluded a probation condition restriction barring the defendant from the Kohls department store was a reasonable probation condition.  Like the *Moran* court, the *Contreras* court rejected the defendant's argument this condition limited his right to travel.  (*Id.* at p. 883.)

Here, the relevant condition restricts defendant only from going within 100 yards of the Aramark location.  This is where he stole five catalytic converters and caused significant damage to the vans in the parking lot.  This condition (barring him from within 100 yards of one location in Redding) is substantially less restrictive than the condition imposed in *Moran*.  Other than that limitation, the condition does not interfere with defendant's ability to travel in and about Redding or the rest of the state.  For the reasons expressed in *Moran*, we conclude this condition keeping defendant away from

the scene of his crime is a valid exercise of the trial court's discretion and not an overbroad restriction on his right to travel.[3]

## III. DISPOSITION

Defendant's conviction for grand theft is reduced to a misdemeanor of petty theft. In all other respects the judgment is affirmed.

/s/
MESIWALA, J.

We concur:

/s/
EARL, P. J.

/s/
KRAUSE, J.

---

[3] We reject defendant's attempt to inject extra record information in the form of a Google maps search of Redding. That evidence is not in the record and normally, the reviewing court will consider only matters which were part of the record at the time the judgment was entered. *(People v. Jacinto* (2010) 49 Cal.4th 263, 272 fn. 5.)