Filed 5/26/21  P. v. Bishopp CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G058089 |
| v. | (Super. Ct. No. 16WF1256) |
| SEAN ERIC BISHOPP, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from an order of the Superior Court of Orange County, Gary S. Paer, Judge.  Reversed.

Paul R. Kraus for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina and Melissa Mandel, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

Police officers arrested Sean Eric Bishopp while he sat in a vehicle parked near a store waiting for his wife and mother-in-law to return from their attempt to steal the store's merchandise. Bishopp's mother-in-law ran toward his car carrying stolen loot pursued by the store's loss prevention officers. A physical altercation ensued when one of the officers attempted to stop her. Meanwhile, one of the officers spotted Bishopp's wife videotaping Bishopp's arrest with her cell phone. Officers arrested her, seized the phone, and booked it into evidence.

Bishopp was charged with felony resisting arrest, conspiracy to commit theft, grand theft, and an *Estes* robbery. (*People v. Estes* (1983) 147 Cal.App.3d 23, 27-28 (*Estes*); see also *People v. Robins* (2020) 44 Cal.App.5th 413, 415, 418 [use of force or fear to keep possession of the victim's property is sometimes referred to as an "*Estes* robbery"].) Bishopp told his trial attorney he did not resist officers when arrested and he believed the cell phone video his wife took would support his claim. Bishopp's trial attorney, however, failed to file a formal motion to obtain the cell phone video or conduct any investigation on what, if anything, happened to the cell phone after it was booked into evidence at the police department.

Bishopp decided to accept the prosecutor's plea agreement after his trial attorney told him the video was not part of the discovery and "nothing ever came of [the issue]." Bishopp pleaded guilty to conspiracy to commit theft, grand theft, and felony resisting arrest in exchange for dismissal of the robbery count. Bishopp was placed on three years' formal probation on condition he serve 364 days in jail.

Bishopp's new attorney filed a motion to withdraw Bishopp's guilty plea based on his trial attorney's constitutionally inadequate representation. Bishopp's motion counsel asked the trial court to enforce his subpoena of the police department's custodian of records so he could obtain the cell phone video or present evidence it had been destroyed. The court declined to enforce the subpoena and denied Bishopp's motion.

2

Bishopp contends the trial court denied his right to a fair hearing when it refused to enforce the subpoena of the custodian of records. We agree and reverse the order denying Bishopp's motion to withdraw his guilty plea.

I

FACTS AND PROCEDURAL HISTORY

A. *Bishopp's Arrest and Prosecution*

In June 2016, Bishopp's wife, Rosita Bishopp, and her mother, Nellie Saenz (Saenz)—both codefendants—collected fashion merchandise valued around $4,000 and then left a department store without paying. Two of the store's loss prevention employees pursued Saenz when she left the store with the merchandise.

Once outside, Saenz ran toward a parked car with false license plates, idling at a location not designated for parking. Bishopp sat in the driver's seat and Saenz's husband sat in the rear passenger seat. A struggle ensued when the employees caught up with Saenz outside the vehicle's front passenger door as Saenz held onto the merchandise

While the employees struggled to handcuff Saenz, Costa Mesa Police Department Officers Tripp and Gallardo, who had arrived on the scene earlier, contacted Bishopp and Saenz's husband as they sat in their vehicle. According to Tripp's preliminary examination testimony five months later, Bishopp obeyed an initial command to turn off the engine but refused to get out of the car and started yelling at the officers. Tripp claimed Bishopp disobeyed three or four commands to exit the vehicle before Gallardo opened the door to pull him out. According to Tripp, Bishopp resisted Tripp's efforts to remove him from the car. Tripp spotted Rosita standing outside the car and it appeared as if she had videotaped Bishopp's arrest with her cell phone. Tripp seized the phone and booked it into evidence without watching the video.

The Orange County District Attorney's Office filed a complaint charging Bishopp, Rosita, and Saenz with grand theft, Saenz with misdemeanor battery on a store employee, and Bishopp with misdemeanor resisting arrest. At the preliminary hearing,

3

Tripp testified about the events underlying the charges. Bishopp was held to answer and a week later the prosecutor charged Bishopp with a felony resisting count involving both Officers Tripp and Gallardo. Sixteen months later, in April 2018, the prosecutor added an *Estes* robbery count against Bishopp and Rosita.

Bishopp faced the following felony charges: second degree robbery (Pen. Code, §§ 211, 212.5, subd. (c); count 1; all further undesignated statutory references are to the Penal Code); conspiracy to commit theft (§ 182, subd. (a)(1); count 2); grand theft (§ 487, subd. (a); count 3); and resisting Officers Tripp and Gallardo (§ 69; count 4).)

Before pleading guilty, Bishopp received pretrial discovery materials that included the department store's video footage of the theft, but did not include Rosita's cell phone video. At Bishopp's motion to withdraw his plea, Bishopp's trial attorney testified he verbally requested the phone video from the prosecutor, but the prosecutor verbally replied "there was no video" because "it didn't exist anymore or there wasn't anything on the phone anymore." Counsel also believed Tripp had been "involved in an incident . . . involv[ing] a video that turned up [showing] the officers that conducted that incident . . . were lying," but did not file a *Pitchess* motion for officer personnel records after the prosecutor told him that no *Brady* material for Tripp existed. Counsel also failed to file a formal motion requesting production of the video.

Bishopp and his trial counsel reviewed the discovery materials provided, including police reports and the store's surveillance videos. Counsel did not discuss with Bishopp the possibility of a *Pitchess* motion, but on multiple occasions Bishopp and trial counsel discussed the video on Rosita's phone. According to Bishopp, trial counsel first advised "he would get [the video]," before reporting "he [had] tried," and would "try again." Bishopp later testified that when deciding whether to accept the plea bargain, counsel told him "nothing ever came of [the issue]," and advised that "everything we have is what [the prosecution] gave us."

4

*B. Bishopp's Guilty Plea*

On the first day of trial, the prosecutor reached a plea agreement with both Bishopp and Rosita. Although Bishopp told his trial attorney he wanted to go to trial, he followed his counsel's advice and pleaded guilty to counts 2, 3, and 4: conspiracy to commit theft, grand theft, and felony resisting arrest. Bishopp's counsel read the guilty plea form with him, which Bishopp initialed and signed. The form included the following written factual basis for Bishopp's guilty plea: "I resisted Costa Mesa Police Officers Gallardo and Tripp by using force or fear while they were lawfully performing their duties."

In exchange for Bishopp's plea, the prosecutor moved to dismiss the *Estes* robbery against Bishopp and Rosita, and recommended each receive 364 days in county jail and three-year formal probation sentence. The trial court approved the agreement, suspended imposition of sentence and placed Bishopp on formal probation on condition he serve 364 days in county jail.

*C. Motion to Withdraw Guilty Plea*

Bishopp retained new counsel to file a motion to withdraw his guilty plea based on his trial attorney's constitutionally inadequate representation in failing to obtain the cell phone video and failing to file a *Pitchess* motion. Bishopp and his trial attorney testified at the hearing. Motion counsel represented he subpoenaed the custodian of records from the Costa Mesa Police Department to testify about Rosita's phone, but the custodian failed to appear. The trial court denied counsel's request to compel the custodian's appearance.

1. Bishopp's Testimony

Bishopp claimed he pleaded guilty because his trial counsel told him "we had no defense . . . [and] that [a plea bargain] was pretty much the only option we had." Bishopp claimed he had not wanted to initial the factual basis section of his *Tahl* form because he had not done "what it said on the factual statement."

5

According to Bishopp, on the day of the department store theft, he was standing outside his vehicle when the store's loss prevention employees stopped Saenz as she ran toward his car. He got back in his car because one of the employees "told [him] to get back in." Officers Tripp and Gallardo then arrived on the scene. Bishopp claimed Tripp pointed a gun at his head and Gallardo opened the vehicle door and "started punching [him] in the face." Bishopp testified: "They pulled me out of the vehicle and they proceeded to attack me or beat me up a little bit, and then they got me handcuffed."

Bishopp testified he had instructed Rosita to video record the arrest and that she had done so for "about five minutes." Bishopp discussed the video with his counsel. He considered the video "important" and personally went to the Costa Mesa Police Department to learn what happened to it, but the trial court sustained a hearsay objection when asked what he was told about the phone.

Bishopp testified he pleaded guilty because he felt "pressured by my attorney. We had no defense, and [counsel] pretty much told me it's going to be my word against an officer's word and they're going to go with the officer, so you need to – you need to take this [plea bargain offer]."

2. Trial Counsel's Testimony

Bishopp's trial counsel testified he was a criminal defense attorney with 40 years of experience. He confirmed Bishopp wanted to go to trial up to the day he pleaded guilty. On impeachment evidence, trial counsel admitted: "a *Pitchess* motion should have been filed and [not filing one] was clearly a mistake on my part." When asked why he had not filed the motion, counsel replied the prosecutor told him she checked for *Brady* material on Tripp and there was nothing to disclose. This had been in response to counsel having a "discussion with the [prosecutor] about *Brady* material regarding Officer Tripp because [counsel] had some information regarding [] Tripp being involved in some type of investigation by the Costa Mesa Police Department."

6

Trial counsel conceded that, "depend[ing] on what [information was discovered]," it "[p]ossibly could" have changed his advice to Bishopp to enter a plea agreement, explaining "Officer Tripp was involved in an incident at a donut shop, and it just so happened it also involved a video that turned up that showed that the officers that conducted that incident at the donut shop were lying. This is the information that I provided to the [prosecutor] . . . . when she told me she checked and they didn't have [] *Brady* material."

As to the phone video evidence, trial counsel testified that, at the time of advising Bishopp to enter the plea deal, counsel believed Rosita had recorded exculpatory evidence on her phone, neither he nor Bishopp had considered that "the phone might have been destroyed," and he would not have advised Bishopp to plead guilty if he knew it had been destroyed. Counsel explained that following the prosecutor's belated addition of the *Estes* robbery charge against Bishopp in 2018, counsel decided not to file a vindictive prosecution motion, but would have if he found out the phone had been destroyed.

On the department store's footage of Saenz and Rosita's theft, trial counsel testified he informed Bishopp there were "things on the video that [were] very favorable for the prosecution." Notwithstanding, trial counsel claimed "there was strong evidence to support [Bishopp's] position that he had nothing to do with the theft," asserting Saenz had been "high on drugs and totally out of control."

Trial counsel testified he did not explain to Bishopp "there could potentially be more investigati[ng he] could [have done] in order to support [Bishopp's] version of the events" and agreed the information at issue in Bishopp's motion— potentially exculpatory evidence on the phone video and potentially discoverable impeachment evidence against Tripp—were "all pieces of evidence that might [have been] used" at trial. Trial counsel confirmed he recommended Bishopp accept the plea bargain, explaining he "was more concerned about the theft from the store and how [the

7

prosecutor] could connect Bishopp to that based on the circumstantial evidence," and that he "thought[,] under the circumstance at that time[,] it was the best deal we were going to get, and [he] didn't think the risk was worth waging to have a chance of getting convicted of a robbery at trial."

As to the factual basis in the *Tahl* form, trial counsel testified he and Bishopp "were upset with the language in the factual basis," that Bishopp consistenly stated he had not resisted the officers, and that counsel "explained to [Bishopp] that in order to accept the deal from the [prosecutor, they] had no choice but to initial that box and agree with it[,] even if [Bishopp and counsel] believed it wasn't factually true."

3. Trial Court Denies Counsel's Request to Compel Attendance of the Custodian of Record

As noted, Bishopp's motion counsel sought to compel the attendance of the police department's custodian of records based on his representation he had subpoenaed the witness. When no one appeared at the hearing, motion counsel requested the court to enforce the subpoena, asserting the witness was needed to testify on whether police officials had destroyed the phone or whether they still had it in their possession. Motion counsel stated he "belie[ved,] based on [his] investigation outside of court that [the phone] ha[d] in fact been destroyed, and it was destroyed before [Bishopp's] plea was taken."

The trial court denied the request, ruling it "ha[d] enough information [] to make a decision on whether [Bishopp] should be allowed to withdraw his plea." The court noted Bishopp's trial counsel never saw, obtained, or made efforts to secure the purported video, but ruled the issue of the phone's possible destruction was "a collateral issue." The court found the issue was speculative because it was not known if the alleged video even existed and, even if it did, what it showed.

8

4. Trial Court Ruling

The trial court denied Bishopp's motion to withdraw his guilty plea, noting Bishopp's trial counsel's experience and describing Bishopp's plea bargain terms as "a great deal." The trial court found Bishopp "made a knowing, voluntary, and intelligent waiver of his [constitutional] rights based upon his verbal statements to the court and the written documents before the court." The court explained trial counsel had no obligation to pursue speculative motions when presented with a favorable plea agreement. The court concluded trial counsel "was not ineffective[] and [] got a great deal for [Bishopp]."

II

DISCUSSION

Bishopp raises four grounds to support his contention the trial court erred in denying his motion to withdraw his guilty plea: (1) the court violated his constitutional right to compulsory process when it denied his request to enforce his subpoena of the police department's custodian of records; (2) his motion counsel provided ineffective assistance by failing to subpoena the personnel records of the arresting officers; (3) the prosecutor committed misconduct during his cross-examination of Bishopp; and (4) and cumulative error. We agree the court violated Bishopp's due process right to secure the attendance of a subpoenaed witness who had material information concerning trial counsel's alleged failure to investigate a crucial defense. Because the error here prejudicially affected Bishopp's ability to show his trial counsel provided inadequate assistance, we need not address the other grounds raised by Bishopp.

"Before entering his plea, [a defendant is] 'entitled to rely upon his counsel to make an independent examination of the facts, circumstances, pleadings and laws involved and then to offer his informed opinion as to what plea should be entered.' [Citation.] The attorney's role in investigating the facts and researching the applicable law prior to advising the petitioner to plead becomes particularly important because of

9

the serious consequences of a guilty plea. [Citations.]" (*In re Williams* (1969) 1 Cal.3d 168, 175, fn. omitted.) "If counsel's 'failure (to undertake such careful inquiries and investigations) results in withdrawing a crucial defense from the case, the defendant has not had the assistance to which he is entitled.' [Citations.]" (*In re Saunders* (1970) 2 Cal.3d 1033, 1042.)

To prevail on his motion to withdraw his plea based on ineffective assistance of counsel, Bishopp had the burden to show his trial attorney's failure to investigate fell below professional norms and "affected the outcome of the plea process. In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." (*Hill v. Lockhart* (1985) 474 U.S. 52, 59 (*Hill*) [applying *Strickland v. Washington* (1984) 466 U.S. 668 (*Strickland*).) Prejudice is shown if discovery of the evidence would have led counsel to change his recommendation to plead guilty and if the evidence likely would have changed the outcome of a trial. (*Ibid*.)

The evidence showed Bishopp's trial attorney failed to take any steps to secure the video and verify Bishopp's claim he did not resist the officers when arrested. Contrary to the trial court's claim, trial counsel must independently investigate potentially exonerating evidence so the client can intelligently and voluntarily decide whether to accept a plea offer or exercise the defendant's constitutional right to a jury trial. Bishopp's trial attorney failed to investigate or attempt to obtain the video. Indeed, the trial court found Bishopp's trial counsel "never saw the video" and "never made efforts to get the video." This established Bishopp's trial attorney failed to provide constitutionally adequate representation, but Bishopp still had to show his trial lawyer's failure to investigate was prejudicial.

To meet his burden to show *Strickland* prejudice, Bishopp subpoened the police department's custodian of records to learn whether police officials destroyed the

10

cell phone video. This is a relevant inquiry; indeed, vital to satisfy Bishopp's burden. If produced, the video could corroborate the officer's claim Bishopp resisted arrest, or affirmatively show the officers assaulted an unresisting Bishopp. Of course, Bishopp would establish trial counsel's failure to obtain the video prejudiced him if the video showed he did not resist the arresting officers. Bishopp likely would have achieved a more favorable outcome at trial on the resisting and robbery charges or he likely would have received a far better plea agreement than the one he received here.[1]

Bishopp also would establish prejudice if police officials destroyed the video. Bishopp testified he would not have pleaded guilty if he learned the video had been destroyed, and his trial attorney corroborated Bishopp's testimony while adding that he also would have advised Bishopp not to plead guilty, explaining he would have filed a vindictive prosecution motion.[2] At a minimum, counsel would have an obligation to investigate the circumstances surrounding the destruction of the video under the *Trombetta* and *Youngblood* guidelines.

Thus, the police department custodian of records potentially could establish the element of prejudice to support Bishopp's claim his trial attorney provided inadequate

---

[1]     It appears the *Estes* robbery charge was based on Bishopp's resistance to his arrest, which arguably aided Saenz's efforts to flee with the merchandise. Consequently, a video showing Bishopp did not resist would show he did not aid and abet Saenz's *Estes* robbery, although he still would be an aider and abettor of the theft.

[2]     The vindictive prosecution doctrine prohibits "the prosecution from taking certain actions against a criminal defendant, such as increasing the charges, in retaliation for the defendant's exercise of constitutional rights." (*People v. Jurado* (2006) 38 Cal.4th 72, 98.) A presumption of vindictiveness arises when the prosecutor increases the criminal charges under circumstances showing a reasonable likelihood of vindictiveness. (*In re Bower* (1985) 38 Cal.3d 865, 879.) The doctrine usually arises posttrial after the defendant has successfully appealed. While the destruction of defense evidence by the police implicates due process, it is analyzed under the guidelines articulated in *Arizona v. Youngblood* (1988) 488 U.S. 51 (*Youngblood*) and *California v. Trombetta* (1984) 467 U.S. 479 (*California v. Trombetta*). The vindictive prosecution doctrine does not apply in this setting.

assistance.  The trial court, however, declined to enforce the subpoena and compel the custodian's attendance, explaining whether the video existed or not was a "collateral issue."

Bishopp contends the trial court's decision not to enforce the subpoena violated his right to compulsory process under the federal and state Constitutions when it denied his motion to enforce his subpoena of the police department's custodian of records.  We agree.

"The state and federal Constitutions provide that a criminal defendant has the right 'to have compulsory process for obtaining witnesses in his favor.'  (U.S. Const., 6th Amend.; see Cal. Const., art. I, § 15.)  The federal compulsory process right is 'so fundamental and essential to a fair trial that it is incorporated in the Due Process Clause of the Fourteenth Amendment,' making it applicable to the states.  [Citation.]" (*People v. Capers* (2019) 7 Cal.5th 989, 1008 (*Capers*).)

"Article I, section 15 of the California Constitution similarly guarantees as a matter of state constitutional law '[t]he defendant in a criminal cause has the right . . . to compel attendance of witnesses in the defendant's behalf. . . .'" (*People v. Jacinto* (2010) 49 Cal.4th 263, 269.)  The right is fundamental and a basic component of fairness.  (*Ibid*.) "This right is a fundamental element of due process of law." (*Washington v. Texas* (1967) 388 U.S. 14, 19.)  The right is deemed fundamental because "an essential component of procedural fairness is an opportunity to be heard." (*Crane v. Kentucky* (1986) 476 U.S. 683, 690.)  To prevail on a compulsory due process claim, a defendant "'must show at least a *reasonable possibility* that the witness could have given testimony that would have been both material and favorable.'" (*Capers*, supra, 7 Cal.5th at p. 1008, italics added.)  A defendant also must show the deprivation of the right to present a witness was arbitrary and disproportionate to any legitimate purpose.  (*People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 367-368.)

Here, the evidence demonstrates a "reasonable possibility" the record custodian would have provided material and favorable evidence on Bishopp's claim his trial lawyer's failure to secure the video was prejudicial. The arresting officer believed it was material because he seized the cell phone from Bishopp's wife as evidence. Bishopp testified at the hearing he did not resist the officers when they arrested him. Obviously, a video corroborating his claim would be material and favorable. Evidence that police officials destroyed the video also could be material and favorable. Bishopp potentially could have secured a dismissal of the resisting arrest charge if an investigation revealed officers destroyed the video knowing it had "exculpatory value" or that it was "'potentially useful'" to Bishopp's defense. (See *People v. Alvarez* (2014) 229 Cal.App.4th 761, 773-776 [applying *Trombetta* and *Youngblood* guidelines in finding police destruction of a video that "had the potential to exonerate or considerably reduce the culpability" of the defendants].) Accordingly, the court's refusal to enforce the subpoena of a witness who could have provided material and favorable evidence to Bishopp was arbitrary and disproportionate to any legitimate purpose.

The Attorney General, like the trial court, argues the existence of the cell phone was collateral to the issues raised in the motion to withdraw Bishopp's guilty plea. The Attorney General does not explain why the existence of potentially exonerating evidence on the resisting charge was collateral to Bishopp's inadequate assistance claim. Nor does the Attorney General explain why the destruction of the video was immaterial even though it may have provided grounds for a dismissal under *Trombetta* and *Youngblood*. Instead, the Attorney General focuses on the benefit Bishopp received when the prosecutor agreed to dismiss the *Estes* robbery, a potential strike. In other words, that benefit rendered potential exculpatory evidence or facts supporting a dismissal motion collateral to whether Bishopp could withdraw his plea. That is not the issue before this court, nor is it the law in deciding challenges to guilty pleas based on ineffective assistance of counsel.

13

The issue presented in this appeal is more fundamental than evaluating the benefit Bishopp received in a plea bargain. Rather, the issue here is whether Bishopp was denied his constitutional right to present material and favorable evidence that would satisfy the prejudice prong of his claim he received constitutionally inadequate representation. As explained above, the record shows a "reasonable possibility" the testimony of the police department's record custodian would have provided the requisite information to satisfy the prejudice element. Only then would the trial court be in position to determine whether counsel's ineffective performance "affected the outcome of the plea process." (*Hill, supra*, 474 U.S. at p. 59.)[3]

The Attorney General also argues the video evidence "was irrelevant to the court's finding that appellant entered a knowing, voluntary, and intelligent plea." But Bishopp based his motion to withdraw his plea on the violation of his Sixth Amendment right to the effective assistance of counsel. In other words, his guilty plea was the product of counsel's ineffective assistance and therefore his plea was not entered knowingly and voluntarily. (See *People v. Orozco* (2010) 180 Cal.App.4th 1279, 1285.) The failure to enforce the subpoena denied Bishopp the opportunity to present evidence counsel's deficient representation was prejudicial.

The Attorney General complains Bishopp did not meet foundational requirements to show Bishopp's wife "captured the [arrest] on her cell phone and the recording would have assisted the defense." This is simply another way to argue the information sought was not relevant or material. As noted above, Bishopp testified at the hearing that he saw his wife record the arrest and the evidence showed the arresting officer seized the cell phone as evidence, which supports the inference the arrest was recorded since the phone was seized as evidence. Of course, Bishopp could not verify the contents of the cell phone video because the officer seized the phone. Bishopp

---

[3] We express no opinion on the merits of Bishopp's motion to withdraw his guilty plea, which will depend on the evidence presented in a subsequent hearing.

14

established the relevance and materiality of the evidence he sought to elicit from the custodian of records.

Finally, the Attorney General argues Bishopp did not show a "lawful subpoena was properly served" by offering the subpoena into evidence or asking the trial court to make a finding the witness had not appeared. The prosecutor, however, failed to object on that ground in the trial court. Moreover, the court accepted Bishopp's claim he subpoenaed the custodian, but denied Bishopp's request to enforce the subpoena because it viewed the evidence as collateral. "'"An appellate court will ordinarily not consider procedural defects . . . where an objection could have been but was not presented to the lower court by some appropriate method . . . . [I]t is unfair to . . . the adverse party to take advantage of an error on appeal when it could easily have been corrected at trial."'" (*People v. Alistar Ins. Co*. (2003) 115 Cal.App.4th 122, 126, fn. omitted [bail bond forfeiture].)

In sum, the trial court's denial of Bishopp's request to enforce his subpoena of the police department's record custodian denied Bishopp his constitutional right to due process. We therefore reverse the order denying Bishopp's motion to withdraw his guilty plea.

### III

#### DISPOSITION

The order denying the motion to withdraw the plea of guilty is reversed and remanded for further proceedings consistent with the views expressed in this opinion.


ARONSON, J.

WE CONCUR:


MOORE, ACTING P. J.


THOMPSON, J.