Filed 1/17/25  P. v. Sanchez CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JORGE SANCHEZ,<br><br>    Defendant and Appellant. | H051255<br>(Monterey County<br>Super. Ct. No. SS081002B) |

Defendant Jorge Sanchez appeals from the trial court's order denying his petition for recall and resentencing pursuant to Penal Code section 1170, subdivision (d)(1).[1]  In 2011, a jury convicted Sanchez of premeditated attempted murder, assault with a semiautomatic firearm, and street terrorism after he shot and wounded two people in a gang-related attack.  The trial court sentenced Sanchez to a total term of 40 years to life in prison.

On appeal, Sanchez argues the trial court erred in denying his petition for resentencing because his sentence of 40 years to life is a de facto sentence of life without parole (LWOP).  In Sanchez's view, he "will not obtain a realistic opportunity to obtain release until he turns 71 years old, by which time he will lack a meaningful opportunity to reintegrate into society."

---

[1] Unspecified statutory references are to the Penal Code.

The parties waived oral argument and the case was submitted by order filed on July 16, 2024. On September 11, 2024, we vacated submission on our own motion and, by separate letter, requested supplemental briefing from the parties on the following issues: 1) whether Sanchez has forfeited his equal protection argument pertaining to his sentence; 2) assuming this court can consider his equal protection argument, is Sanchez similarly situated to juvenile offenders sentenced to life without the possibility of parole pursuant to Penal Code section 1170, subdivision (d)(1)(A)[2] and is there a rational basis for treating a juvenile offender like Sanchez differently than those sentenced to life without the possibility of parole; and 3) as to the documents submitted in connection with Sanchez's initial request for judicial notice,[3] filed on December 21, 2023 (December 2023 RJN) and deferred for consideration with the merits of the appeal, further explanation of the relevance of certain of those documents, as well as whether judicial notice extends to the contents of the documents.

As we explain below, we disagree with Sanchez's arguments and will affirm the order denying the petition.

---

[2] As the Attorney General noted in his supplemental brief, the California Supreme Court has recently held that when, as here, "plaintiffs challenge laws drawing distinctions between identifiable groups or classes of persons, on the basis that the distinctions drawn are inconsistent with equal protection, courts no longer need to ask at the threshold whether the two groups are similarly situated for purposes of the law in question." (*People v. Hardin* (2024) 15 Cal.5th 834, 850 (*Hardin*).)

[3] Sanchez filed a second request for judicial notice on September 24, 2024 (September 2024 RJN). By separate order dated November 14, 2024, we deferred ruling on the September 2024 RJN for consideration with the merits on appeal.

# I.   FACTUAL AND PROCEDURAL BACKGROUND

## A. Factual background[4]

In February 2008, Sanchez was a passenger in a car driven by a fellow Norteño gang member, Charles Arroyo.  (*Sanchez, supra*, H037360.)  As they drove to Sanchez's house, Sanchez pointed out two teenage pedestrians and said they were Sureños. (*Sanchez, supra*, H037360.)  Sanchez, who was 16 at the time, showed Arroyo a semiautomatic handgun and said they should shoot the pedestrians.  (*Sanchez, supra*, H037360.)  Arroyo stopped the car approximately 20 feet from the teenagers and Sanchez asked if the teenagers " 'banged.' "  (*Sanchez, supra*, H037360.)  Sanchez called out " 'Salinas East Market' " and opened fire on the pedestrians, hitting each of them twice. (*Sanchez, supra*, H037360.)  Police later recovered nine bullet casings at the scene of the shooting.  (*Sanchez, supra*, H037360.)

## B. Procedural background

On June 23, 2011, a jury convicted Sanchez of two counts of attempted first degree murder (§§ 664, 187, subd. (a)); two counts of assault with a semiautomatic firearm (§ 245, subd. (b)); and one count of street terrorism (§ 186.22, subd. (a)).  The jury also found true the associated criminal street gang and firearm allegations (§§ 186.22, subd. (b)(1), 12022.5, subd. (a), 12022.53, subds. (c), (d)), and the allegation that Sanchez inflicted great bodily injury on the victims (§ 12022.7, subd. (a)).

On September 8, 2011, the trial court sentenced Sanchez to concurrent terms of 40 years to life on each of the two counts of attempted premeditated murder, consisting of indeterminate terms of 15 years to life on the attempted murders (§§ 664, 187, subd. (a);

_____

[4] On its own motion, this court takes judicial notice of its prior opinion in Sanchez's direct appeal in *People v. Sanchez* (Feb. 11, 2013, H037360) [nonpub. opn.] (*Sanchez*)).  (Evid. Code, §§ 452, subd. (d)(1), 459, subd. (a).)  We derive our brief summary of the underlying facts from the nonpublished opinion in *Sanchez*.

counts 1, 2), plus determinate terms of 25 years on the associated enhancements for discharge of a firearm causing injury (§ 12022.53, subd. (d)).  The court imposed concurrent upper term sentences of nine years on the two counts of assault with a semiautomatic firearm (§ 245, subd. (b); counts 3, 4) and a concurrent upper term sentence of three years on the charge of active participation in a criminal street gang (§ 186.22, subd. (a); count 5).  The trial court also imposed, but stayed pursuant to section 654, sentences on the remaining associated street gang, firearm, and great bodily injury enhancements (§§ 186.22, subd. (b)(1), 12022.5, subd. (a), 12022.53, subd. (c), 12022.7, subd. (a)).  The court awarded Sanchez a total of 1481 days of credits (1288 days of custody credits plus 193 days of conduct credits).

On April 4, 2023, Sanchez filed a petition for recall and resentencing under section 1170, subdivision (d)(1) arguing that he was entitled to resentencing because his sentence was the "functional equivalent of LWOP."  Following the August 3, 2023 hearing, the trial court denied the petition, concluding that because Sanchez "does have the opportunity to parole at 56 … he will have the ability to … reintegrate within our society" and therefore his sentence is not a "de facto life sentence … ."

Sanchez timely appealed.

## II. DISCUSSION

### A. Requests for judicial notice

#### 1. Applicable legal principles

A request for judicial notice in the court must be served and filed in a separate motion with a proposed order.  (Cal. Rules of Court, rule 8.252(a)(1).)[5]  The motion must explain the relevance of the matter to the appeal; whether the matter to be noticed was presented to the trial court and whether judicial notice was taken; if the trial court did not

---

[5] Unspecified rule references are to the California Rules of Court.

4

judicially notice the matter, why the matter is subject to judicial notice under Evidence Code section 451, 452 or 453; and whether the matter concerns proceedings after the order or judgment that is the subject of the appeal.  (Rule 8.252(a)(2).)

"Reviewing courts generally do not take judicial notice of evidence not presented to the trial court."  (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3.)  Judicial notice should be taken only of relevant matters.  (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1135, fn. 1 (*Ketchum*); *Aquila, Inc. v. Superior Court* (2007) 148 Cal.App.4th 556, 569.)  "While we may take judicial notice of the *existence* of judicial opinions, court documents, and verdicts reached, we cannot take judicial notice of the truth of hearsay statements in other decisions or court files [citation], or of the truth of factual findings made in another action."  (*Johnson & Johnson v. Superior Court* (2011) 192 Cal.App.4th 757, 768.)

"While courts may notice official acts and public records, 'we do not take judicial notice of the truth of all matters stated therein.'  [Citations.]  '[T]he taking of judicial notice of the official acts of a governmental entity does not in and of itself require acceptance of the truth of factual matters which might be deduced therefrom, since in many instances what is being noticed, and thereby established, is no more than the existence of such acts and not, without supporting evidence, what might factually be associated with or flow therefrom.'  [Citation.]"  (*Mangini v. R. J. Reynolds Tobacco Co.* (1994) 7 Cal.4th 1057, 1063–1064, disapproved on another ground in *In re Tobacco Cases II* (2007) 41 Cal.4th 1257, 1273.)

### *2. December 2023 RJN*

In his December 2023 RJN, Sanchez requested that this court take judicial notice of 13 exhibits (A through M).  In the trial court, Sanchez sought judicial notice of some,

but not all, of these exhibits in his reply in support of his petition for resentencing.[6]  At the hearing on that petition in the trial court, defense counsel referenced some of the statistics presented in those exhibits, specifically that "only 12 to 15 percent [of inmates] are given parole" at their first parole hearing but did not directly ask the trial court to rule on the request for judicial notice set forth in his reply papers.  The trial court did not state whether it was or was not taking judicial notice of the documents, but asked only if Sanchez was "relying on statistics that, frankly, have become outdated?"  Defense counsel responded that this was not "speculati[on]" and the "statistics … [are] from CDCR [i.e., the California Department of Corrections and Rehabilitation], from their own website and they're mentioned all in my footnotes …. So they're not outdated."

On appeal, Sanchez argues that the materials are relevant to the issue presented on appeal and asserts that judicial notice is appropriate as these are "[f]acts and propositions that are not reasonably subject to dispute and are capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy."  (Evid. Code, § 452, subd. (h).)  By separate order dated December 26, 2023, we deferred ruling on that request for consideration with the merits of the appeal.

The exhibits, which we have grouped into categories where possible, are as follows:

---

[6] Specifically, in footnote 3 of his reply papers, Sanchez cited an article from a medical journal and then requested that the court "take judicial notice of this article and all other referenced articles *post* under Evidence Code § 452 [subdivisions] (g) and (h) as facts and propositions that are of common knowledge, not subject to dispute, and capable of immediate and accurate determination."  Among the multiple documents referenced in his reply papers, Sanchez cited to what are now Exhibits E, H, I, J, K, L, and M to the request for judicial notice he filed in the instant appeal.

6

Exhibits A through E:  The Board of Parole Hearings' (BPH) annual Report of Significant Events for the years 2017 through 2021, indicating that the BPH granted parole to fewer than 10 percent of first-time applicants in each of those years.[7]

Exhibit F:  A document authored by the United States Sentencing Commission (USSC) in February 2015, entitled "Life Sentences in the Federal System."  Sanchez relies on this document for the proposition that the USSC "has defined 'a sentence length of 470 months or longer,' or 39 years and two months, as a de facto life sentence because this sentence is 'consistent with the average life expectancy of federal criminal offenders.' "

Exhibit G:  A report from the U.S. Department of Justice, Office of the Inspector General (OIG), published in February 2016, entitled "The Impact of an Aging Inmate Population on the Federal Bureau of Prisons."  Sanchez indicates that, per this report, the OIG "has identified age 50 as the threshold for research and reports on the aging prison population."

Exhibits H through M:  Annual reports from the California Correctional Health Care System (CCHCS) entitled "Analysis of [calendar year] inmate death reviews in the California Correctional Healthcare System" (some capitalization omitted) for the years 2016 through 2021.  Sanchez cites mortality statistics from these documents to demonstrate that the average life expectancy of a male inmate in a California correctional facility over this time period ranged from a low of 55.9 years (in 2018) to a high of 65 years (in 2019).

---

[7] According to the reports, the exact figures were 7.38 percent (285 of 2,104) in 2017, 6.64 percent (394 of 2,618) in 2018, 8.65 percent (515 of 4,459) in 2019, 9.55 percent (523 of 4,999) in 2020, and 9.21 percent (479 of 5,197) in 2021.

.

We deny Sanchez's December 2023 RJN in its entirety. As discussed above, the trial court did not expressly rule on Sanchez's request for judicial notice (which was itself untimely as it was first made in Sanchez's reply papers) and Sanchez did not ask that it do so. Accordingly, we are not required to take judicial notice of either the materials that Sanchez did present to the trial court (designated as Exhs. E, H, I, J, K, L, and M on appeal) or the other exhibits (Exhs. A, B, C, D, F, and G) which were not presented to the trial court at all. "Although Evidence Code section 459, subdivision (a) generally requires that a reviewing court must take judicial notice of matters the trial court judicially noticed, there are two exceptions: (1) if the matter was not 'properly noticed by the trial court,' the appellate court is not required to take judicial notice; and, regardless, (2) the appellate court 'may take judicial notice of a matter in a tenor different from that noticed by the trial court.' (Evid. Code, § 459, subd. (a).)" (*Mireskandari v. Gallagher* (2020) 59 Cal.App.5th 346, 360; see also *Brosterhous v. State Bar* (1995) 12 Cal.4th 315, 325–326 ["An appellate court may properly decline to take judicial notice under Evidence Code sections 452 and 459 of a matter which should have been presented to the trial court for its consideration in the first instance"]; *People v. Jacinto* (2010) 49 Cal.4th 263, 272, fn. 5 [" '[A]n appellate court generally is not the forum in which to develop an additional factual record.' "].)

### 3. September 2024 RJN

In the September 2024 RJN, Sanchez asks that we take judicial notice of three documents: 1) the Attorney General's brief filed in *People v. Joseph Armando Bonilla* (B336027, app. pending); 2) the Attorney General's supplemental letter brief filed in *People v. Luis Olmos* (B333138, app. pending); and 3) the Attorney General's notice of new authority filed in *People v. Ramiro Munoz* (B336656, app. pending). Sanchez argues that these three documents are relevant to "show that, in three current appellate cases, [the Attorney General] has conceded that Penal Code section 1170, subdivision

8

(d)(1)(A) cannot exclude juvenile offenders sentenced to de facto life without possibility of parole sentences."

In the Attorney General's supplemental briefing, he withdraws the argument that *People v. Heard* (2022) 83 Cal.App.5th 608 (*Heard*), was wrongly decided and now "agree[s] that juveniles with an LWOP or de facto LWOP sentence are entitled to section 1170, subdivision (d), hearings."  By virtue of this withdrawal, the Attorney General contends "there is no basis to grant" the September 2024 RJN since its position in these unrelated cases now aligns with its position in this appeal.  We agree that the documents are no longer relevant (*Ketchum*, *supra*, 24 Cal.4th at p. 1135, fn. 1), and therefore deny the September 2024 RJN.

### B. Sanchez's equal protection argument

#### 1. Forfeiture

In his supplemental briefing, Sanchez argues that, although he did not explicitly state that he was raising an equal protection argument, it was clear to the trial court and the district attorney that Sanchez was seeking resentencing because he had, in his view, been sentenced to the functional equivalent of LWOP.  In denying his petition, the trial court expressly stated that it did "not find that the defendant's sentence is a *de facto* life sentence …."

In his supplemental brief, the Attorney General contends that Sanchez has forfeited any equal protection argument by failing to raise it when he was originally sentenced in 2011 and therefore the trial court "could not have 'understood the [equal protection] issue."  He discounts Sanchez's record citations because they "pertain to the resentencing petition he filed over a decade *after* trial."

We are not convinced by the Attorney General's claim that Sanchez forfeited his equal protection argument by failing to raise it when he was initially sentenced.  First, at the time of Sanchez's sentencing, section 1170 did not provide a mechanism by which a

juvenile offender could petition for recall and resentencing. That provision was first added to the Penal Code in 2013 (see former § 1170, subd. (d)(2)(E); Stats. 2012, ch. 828, § 1). Furthermore, at all times since its addition to section 1170, the subdivision required that the defendant have served "at least 15 years" of their sentence before bringing a petition for recall and resentencing. (Former § 1170, subd. (d)(2)(E), § 1170, subd. (d)(1).) Any argument by Sanchez in 2011 that he was entitled to relief under this statute under equal protection principles would have been premature.

In his petition, Sanchez cited *Heard* for the proposition that "there is no rational basis for the Legislature to differentiate between those sentenced to LWOP in name (who were initially entitled to relief under the statute) and those sentenced to the functional equivalent, or *de facto*, LWOP. (*Heard, supra*, [83 Cal.App.5th] at p. 631.)" In opposing Sanchez's petition, the district attorney acknowledged *Heard*'s constitutional analysis but argued that Sanchez did not qualify for relief because he was "not serving the equivalent of an LWOP sentence." We conclude that the argument Sanchez raised in his resentencing petition was sufficient to apprise the trial court that Sanchez believed he was serving the functional equivalent of an LWOP sentence and, pursuant to equal protection principles, was entitled to seek relief under section 1170, subdivision (d)(1).

### 2. The Attorney General no longer contends **Heard** *was wrongly decided*

The Attorney General has, in his supplemental briefing, withdrawn his prior position that *Heard* was wrongly decided and concedes that "juveniles with an LWOP or de facto LWOP sentence are entitled to section 1170, subdivision (d)[] hearings." Based on the Attorney General's change in position, on appeal the sole question before this court is whether Sanchez's sentence is the functional equivalent of LWOP, such that he is eligible to petition for relief under section 1170, subdivision (d).[8] As explained below,

---

[8] We express no opinion on the question of whether *Heard* correctly interprets section 1170 with respect to de facto LWOP cases. As we discuss in more detail below,

10

we conclude Sanchez's sentence of 40 years to life sentence is not a de facto life sentence under section 1170, subdivision (d), and that, notwithstanding the conclusion reached in *Heard*, Sanchez is ineligible for relief.

### C. Sanchez's sentence is not the functional equivalent of LWOP

Sanchez argues that the trial court erred in denying his section 1170, subdivision (d) petition for recall and resentencing because his sentence of 40 years to life is a de facto LWOP sentence. Citing *Heard*, *supra*, 83 Cal.App.5th 608, Sanchez contends that he is entitled to seek relief under section 1170, subdivision (d)(1), despite his eligibility for a youth offender parole hearing under section 3051.[9] Although the Attorney General no longer argues that *Heard* was wrongly decided, he maintains that Sanchez's sentence is neither LWOP nor de facto LWOP and thus Sanchez is not entitled to recall and resentencing under section 1170, subdivision (d).

We agree with the Attorney General that Sanchez's sentence is not de facto LWOP and thus he is not entitled to the benefit of section 1170, subdivision (d).

### 1. Applicable legal principles and standard of review

In *Graham v. Florida* (2010) 560 U.S. 48, the United States Supreme Court held that the Eighth Amendment prohibits LWOP sentences for juvenile offenders who committed non-homicide offenses. (*Id*. at p. 82.) In response, the California Legislature enacted Senate Bill No. 9 (2011–2012 Reg. Sess.) (Senate Bill 9), effective January 1, 2013, which amended section 1170 by adding former subdivision (d)(2) (now subdivision

---

because we do not find Sanchez's sentence the functional equivalent of LWOP, resolving the question presented in *Heard* is not necessary to our analysis of this matter regardless of the People's change of position.

[9] Sanchez concedes that his sentence does not violate the U.S. Constitution's prohibition on cruel and unusual punishment under the Eighth Amendment because, due to the enactment of section 3051, he will qualify for a youth offender parole hearing after serving 25 years of incarceration. (*People v. Contreras* (2018) 4 Cal.5th 349, 381–382 (*Contreras*); § 3051, subd. (b)(3).)

11

(d)(1)).  (Stats. 2012, ch. 828, § 1.)  Pursuant to this subdivision, "[w]hen a defendant who was under 18 years of age at the time of the commission of the offense for which the defendant was sentenced to imprisonment for life without the possibility of parole has been incarcerated for at least 15 years, the defendant may submit to the sentencing court a petition for recall and resentencing."  (§ 1170, former subd. (d)(2)(A)(i), now subd. (d)(1)(A).)

"The petition shall include the defendant's statement that the defendant was under 18 years of age at the time of the crime and was sentenced to life in prison without the possibility of parole, the defendant's statement describing their remorse and work towards rehabilitation, and the defendant's statement that one of the following is true:  [¶] (A) The defendant was convicted pursuant to felony murder or aiding and abetting murder provisions of law.  [¶]  (B) The defendant does not have juvenile felony adjudications for assault or other felony crimes with a significant potential for personal harm to victims prior to the offense for which the sentence is being considered for recall. [¶]  (C) The defendant committed the offense with at least one adult codefendant.  [¶] (D) The defendant has performed acts that tend to indicate rehabilitation or the potential for rehabilitation, including, but not limited to, availing themselves of rehabilitative, educational, or vocational programs, if those programs have been available at their classification level and facility, using self-study for self-improvement, or showing evidence of remorse."  (§ 1170, subd. (d)(2).)  "If the court finds by a preponderance of the evidence that one or more of the qualifying circumstances in the petition are true, the court must recall the defendant's sentence and hold a hearing to resentence the defendant. (*Id*., subd. (d)(2)(E).)"  (*In re Kirchner* (2017) 2 Cal.5th 1040, 1050.)

In *People v. Caballero* (2012) 55 Cal.4th 262, the California Supreme Court held that the prohibition on LWOP sentences for juvenile offenders convicted of non-homicide offenses also applies to "term-of-years sentence[s] that amount[] to the

12

functional equivalent of a life without parole sentence." (*Id.* at p. 268.)  According to *Caballero*, a sentence is the functional equivalent of LWOP if it includes a "term of years with a parole eligibility date that falls outside the juvenile offender's natural life expectancy." (*Ibid.*)

In 2014, in an effort to conform California's juvenile sentencing with *Graham* and *Caballero*, the Legislature enacted section 3051.  (See *S*tats. 2013, ch. 312, § 4; *People v. Franklin* (2016) 63 Cal.4th 261, 268, 277 (*Franklin*).)  Section 3051 requires the BPH to conduct a "youth offender parole hearing" at specified times during the incarceration of certain youthful offenders.  (See § 3051, subds. (a)(1), (b); *Franklin*, *supra,* at p. 277.)  As relevant to this case, juvenile offenders convicted of a controlling offense "for which the sentence is a life term of 25 years to life shall be eligible for release on parole at a youth offender parole hearing during the person's 25th year of incarceration." (§ 3051, subd. (b)(3).)  As of January 1, 2018, most juvenile offenders sentenced to explicit LWOP terms are also eligible for parole during their 25th year of incarceration.  (§ 3051, subd. (b)(4), as amended by Stats. 2017, ch. 684, § 1.5.)

In interpreting the language of a statute, the principles of statutory construction are well established.  " ' " 'Our task is to discern the Legislature's intent.  The statutory language itself is the most reliable indicator, so we start with the statute's words, assigning them their usual and ordinary meanings, and construing them in context.  If the words themselves are not ambiguous, we presume the Legislature meant what it said, and the statute's plain meaning governs.  On the other hand, if the language allows more than one reasonable construction, we may look to such aids as the legislative history of the measure and maxims of statutory construction.  In cases of uncertain meaning, we may also consider the consequences of a particular interpretation, including its impact on public policy." [Citation.]  " 'If possible, significance should be given to every word, phrase, sentence and part of an act in pursuance of the legislative purpose.' [Citation.] …

13

'[A] construction making some words surplusage is to be avoided.' [Citation.] 'When used in a statute [words] must be construed in context, keeping in mind the nature and obvious purpose of the statute where they appear.' [Citations.] Moreover, the various parts of a statutory enactment must be harmonized by considering the particular clause or section in the context of the statutory framework as a whole." ' " (*DeNike v. Mathew Enterprise, Inc.* (2022) 76 Cal.App.5th 371, 378.)

We review the interpretation of a statute de novo. (*City of Saratoga v. Hinz* (2004) 115 Cal.App.4th 1202, 1212, citing *People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432.)

### 2. Analysis

Sanchez urges us to follow *Heard*, *supra*, 83 Cal.App.5th, in which the court held that denying relief under section 1170, subdivision (d) to juvenile offenders sentenced to functionally equivalent LWOP terms violates their constitutional right of equal protection. The Attorney General argues that *Heard* is factually distinguishable. We agree with the Attorney General. Because Sanchez's sentence is not a de facto LWOP sentence, he is not entitled to relief under section 1170, subdivision (d).[10]

---

[10] In his initial briefing, the Attorney General argued in the alternative that we should not follow *Heard* because it is wrongly decided and inconsistent with California Supreme Court precedent, specifically *Hardin*, *supra*, 15 Cal.5th 834 and *Franklin*, *supra*, 63 Cal.4th 261. As discussed above, the Attorney General has, in his supplemental brief, withdrawn this alternative argument. Accordingly, we need not and do not address whether *Heard* contradicts *Hardin* and *Franklin*.

More recently, the Second District Court of Appeal, Division Three, in *People v. Sorto* (2024) 104 Cal.App.5th 435 (*Sorto*)) agreed with *Heard* and concluded that juveniles sentenced to functionally equivalent LWOP sentences are entitled to petition for relief under section 1170, subdivision (d). (*Sorto*, *supra*, at p. 454.) Like *Heard*, *Sorto* is distinguishable because the sentence imposed on the defendant in that case was *significantly* longer than the sentence imposed on Sanchez. In *Sorto*, the defendant was sentenced to "a determinate term of 10 years plus an indeterminate term of 130 years to life." (*Sorto*, *supra*, at p. 440, footnote omitted.)

In *People v. Perez* (2013) 214 Cal.App.4th 49, the Court of Appeal analyzed several California cases considering whether the imposition of various sentences constituted the functional equivalent of life without parole. (*Id.* at pp. 55–57.) The court observed: "There is a bright line between LWOP's and long sentences *with* eligibility for parole *if* there is some meaningful life expectancy left when the offender becomes eligible for parole. We are aware of—and have been cited to—no case which has used the *Roper-Graham-Miller-Caballero* line of jurisprudence to strike down as cruel and unusual any sentence against anyone under the age of 18 where the perpetrator still has substantial life expectancy left at the time of eligibility for parole." (*Id.* at p. 57, original italics, footnote omitted.) Because Perez—who was sentenced to 30 years to life for several non-homicide offenses—would be eligible for parole at 47 years of age, the court rejected the argument that his sentence constituted a "de facto" sentence of LWOP, and concluded the sentence was constitutional under both the federal and state Constitutions. (*Id.* at pp. 58–59.)

In support of his appeal, Sanchez also relies on *Contreras*, *supra*, 4 Cal.5th 349, which held that sentences of 50 years to life and 58 years to life for nonhomicide offenses committed by two 16-year-old defendants violated the Eighth Amendment. (*Contreras, supra*, at p. 356.) After acknowledging its prior holding in *Franklin* that 25 years to life was not the functional equivalent of LWOP (*Contreras*, at p. 359), the court concluded a term of 50 years to life would not allow a juvenile offender to rejoin society for a "sufficient period to achieve reintegration as a productive and respected member of the citizenry." (*Id.* at p. 368.) Since Sanchez was not sentenced to 50 years to life, however, *Contreras* is not controlling.

Here, Sanchez was sentenced to 40 years to life for premeditated attempted murder and assault with a semiautomatic firearm. Unlike the defendants in *Heard* and *Contreras*, Sanchez is not serving a sentence of 103 years to life, 50 years to life, or 58

15

years to life.  (*Heard*, *supra*, 83 Cal.App.5th at pp. 613–614; *Contreras*, *supra*, 4 Cal.5th at p. 356.)  Sanchez will have the opportunity for release on parole at age 56.[11]  Sanchez does not dispute this estimate, and the record sufficiently supports it.  Should he be granted parole at 56, he will have the opportunity to rejoin society for a sufficient period to achieve reintegration as a productive and respected member of the citizenry.  The possibility of release at 56 also provides an incentive to rehabilitate while in custody and is in line with the penological goals for sentencing those who commit attempted murder.

In his request for judicial notice, Sanchez presented statistics to demonstrate that very few defendants are granted parole at their initial hearing.  We denied that request in its entirety, but even if we were to take judicial notice of these statistics, it would be inappropriate to speculate about how Sanchez may conduct himself during his period of incarceration and what actions the parole board may take when he is eligible for parole.

Accordingly, we find Sanchez's sentence is not the functional equivalent of life without the possibility of parole.  Therefore, the trial court did not err in denying his petition for recall and resentencing pursuant to section 1170, subdivision (d)(1).

### III.  DISPOSITION

The August 3, 2023 order denying Sanchez's petition for recall and resentencing pursuant to Penal Code section 1170, subdivision (d)(1) is affirmed.

---

[11] In light of our conclusion, we do not find it necessary to address the Attorney General's argument that Sanchez's sentence is not de facto LWOP because, under section 3051, he will be eligible for parole once he has served 25 years of his sentence.  In fact, we will point out that such an argument would also appear to be inconsistent with the Attorney General's new position on *Heard*, which held that for purposes of determining whether a sentence is de facto LWOP in the context of section 1170 the court considers the sentence imposed *without regard to* later reductions of the defendant's parole eligibility date.  (*Heard*, *supra*, 83 Cal.App.5th at pp. 628–629.)

_____
WILSON, J.

WE CONCUR:


_____
LIE, Acting P. J.



_____
BROMBERG, J.



*The People v. Sanchez*
H051255